**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X   Case No.
KAMILE BEATTY-SHUE,

                                                                **COMPLAINT**

                                Plaintiff,

                                                                 **PLAINTIFF DEMANDS**
                -against-                                          **A TRIAL BY JURY**

COMMUNITY CARE COMPANIONS, INC.,

                                Defendant.
-------------------------------------------------------------------------X

        Plaintiff, KAMILE BEATTY-SHUE ("Plaintiff" or "Shue"), by her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendant, COMMUNITY CARE COMPANIONS, INC. ("Defendant") as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the **New York State Human Rights Law**, NYS Executive Law § 296, *et seq*. ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated and retaliated against** by Defendant due to her **sex**, **race** and **color**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101, *et seq*., 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in accordance with 28 U.S.C. § 1391(b) in that that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated 06/27/2022, concerning the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Notice of Right to Sue.

## PARTIES

8. Plaintiff, a Black woman, at all relevant times herein was and is a resident of the State of New York.

9. As such, Plaintiff is a "person" and an "employee" entitled to protection as defined by federal and state laws referenced herein.

10. Defendant is a domestic corporation duly organized and existing under the laws of the State of New York.

11. Defendant – at all relevant times herein – "employed" at least fifteen (15) employees.

12. Thus, Defendant is an "employer" within the meaning of the relevant statutes references herein.

## FACTUAL ALLEGATIONS

A. DEFENDANT ENDORSED A CAMPAIGN OF DISCRIMINATION AGAINST PLAINTIFF ON THE BASIS OF HER SEX

13. On or about March 13, 2003, Shue was hired by Defendant as a Director of Training and Special Projects.

14. Throughout Shue's employment with the Defendant – spanning nearly twenty (20) years – her performance met or exceeded the Defendant's expectations.

15. Indeed, on or about April 27, 2021, Shue was promoted by Defendant from a part-time remote position as a Compliance Officer to a full-time position as a Compliance Officer with direct oversight of Human Resource Compliance.

16. At all relevant times herein, Shue earned approximately one-hundred and ten thousand dollars ($110,000) per year as an employee for Defendant.

17. In connection with her promotion, Shue executed an offer letter with Defendant on or about April 27, 2021.

18. Pursuant to the offer letter, Shue was granted additional compensatory benefits.

19. Pursuant to the offer letter, Shue was granted authority to work remotely on a seasonal basis, at-home for Defendant.

20. At all relevant times, Shue reported to the former president who worked in the office on a full-time basis until February 8, 2022.

21. However, after being promoted, Defendant instituted an unconscionable campaign of discrimination and retaliation against Shue.

22. Specifically, Kenneth Fay ("Fay") – an employee of Defendant – sexually harassed Plaintiff throughout the summer of 2021.

23. Shue – at all relevant times herein – was Fay's supervisor.

24. Fay asked Shue to lunch nearly every week in June and July 2021.

25. At all relevant times herein, Shue declined to go to lunch with Fay.

26. Fay further pressured Shue to see him outside of work for the Defendant.

27. Specifically, Fay attempted to pursue a sexual and romantic relationship with Shue.

28. At all relevant times herein, Shue refused Fay's requests to see him outside of work – romantically or otherwise.

29. Fay made further sexual advances against Shue which she at all relevant times herein declined.

30. For instance, on or about July 8, 2021, Fay texted Shue to ask where she was.

31. Fay subsequently asked Shue to dinner.

32. In response, Shue declined.

33. Moreover, throughout 2021, Fay questioned Shue whether she was "happily married?"

34. Fay also indicated on various occasions that he and Shue would make a "good pair."

35. In response, emblematic of Shue's other denials of Fay's sexual advances, Shue advised Fay she was happily married and did not want to pursue any form of sexual and romantic relationship with Fay.

36. Despite Shue's refusal to engage with Fay outside of work for Defendant, Fay continued to approach Shue at Defendant's offices to question her marriage and pursue a sexual and romantic relationship with her.

37. For example, on or about July 23, 2021, Shue was cornered by Fay as she was leaving Defendant's offices.

38. On or about that day, Fay pulled down his mask and creepily whispered to Fay, "Please – let me take you to lunch before you leave."

39. Fay further suggested that she engage in a romantic relationship with him.

40. Shue responded that she was "leaving for the day" and rejected Fay's request to eat lunch together.

41. Thereafter, on or about July 30, 2021, Shue made an internal written complaint against Fay to Defendant due to Fay's persistent campaign of sexual harassment against her.

42. In addition, other internal complaints by Defendant's employees were made against Fay.

43. Specifically, Fay engaged in multiple campaigns of oppressive and discriminatory harassment against female employees of Defendant throughout the duration of his employment.

44. Sometime in or around July 2021, Fay admitted to Defendant's staff that the allegations in the Shue's complaint were true.

45. At the same time, Fay admitted to sexually harassing other employees of Defendant.

46. Around this time, Defendant improperly instructed Shue to continue acting as Fay's supervisor.

47. In this respect, Defendant did not intervene to protect Shue from ongoing sexual harassment against her by Fay.

48. As a result, Fay continued to make indirect attempts to harass and interact with Shue. By way of example, on several occasions Fay would stay late and work overtime although Shue advised him that Defendant was not approving overtime. Instead, he would indicate that he was clocked out and would take a later bus home in an effort to catch Shue alone; however, Shue would quickly exit the office to avoid her discomfort with being alone with Fay.

49. With respect to Defendant's purported investigation of Shue's complaint and related allegations of sexual harassment against Fay by Defendant's employees, Defendant failed to properly investigate, acknowledge and remedy the discriminatory conduct described herein.

50. Nor did Defendant follow their company procedures and policies with respect to their investigation(s).

51. For example, Defendant instructed Shue to "write up" performance issues against Fay after she made her complaint, in violation of their company policies and procedures.

52. In other words, Defendant commanded Shue to concoct performance issues against Fay in order to provide an official business reason for terminating his employment on behalf of Defendant and on a basis unrelated to the complaints of sexual harassment.

53. Ultimately, after weeks of forcing Shue to intimately work with Fay after her complaint, on or about August 11, 2021, Defendant terminated Fay's employment.

B. **DEFENDANT RETALIATED AGAINST PLAINTIFF FOR COMPLAINING OF DISCRIMINATION AND SEXUAL HARASSMENT.**

54. In or around July, 2021, Shue submitted a written complaint to Defendant detailing incidents of racial bias perpetrated by Karen Aflalo ("Aflalo") - a member of Defendant's Human Resources department.

55. Defendant retaliated against Shue after her complaint was made.

56. Firstly, Defendant claimed Shue's complaint was unfounded.

57. Specifically, on or about September 23, 2021, Mark Gatien ("Gatien") – a principal owner of Defendant – and Aflalo ("Aflalo") initiated a Zoom videocall with Shue.

58. Both Gatien and Aflalo possessed authority on behalf of Defendant to effectuate personnel decisions including but not limiting to relating to Shue's employment status.

59. During the Zoom call, Aflalo did not turn on her video to face Shue.

60. Aflalo did not turn on the video function because she did not perceive the meeting to be important.

61. During the Zoom call, Gatien indicated that Shue's allegations in her complaint against Aflalo were "unfounded."

62. Similarly, Gatien called the allegations by other employees against Aflalo – as detailed in their internal complaints to Defendant's management – "unfounded".

63. Gatien further instructed Shue to "put" her complaint "behind her" and continue diligently working for Defendant.

64. At the same time, Gatien criticized Shue's communication style.

65. Gatien specifically indicated that Shue's communication style needed to improve.

66. This was the first time Defendant had criticized Shue's communication style as adversely effecting her work performance for Defendant.

67. <u>Secondly</u>, Defendant retaliated against Shue in 2021 and 2022 by stripping her of existing trust and authority to e-mail Defendant's in-house counsel – Emina Poricanin ("Poricanin").

68. Prior to and at certain times after her complaint, Shue engaged in a working relationship with Poricanin.

69. Indeed, Defendant's compliance team – to which Shue was a member – routinely partnered with Defendant's legal department, including Poricanin.

70. Aflalo and other employees, however, overtly threatened and discouraged Shue from contacting Poricanin.

71. Defendant refused to authorize Shue to initiate any communications with Poricanin to prevent Shue from escalating other complaints of discrimination and retaliation against Defendant to in-house counsel, as well as in retaliation for Shue's filing of her complaint.

72. <u>Thirdly</u>, after her complaint, Aflalo and Defendant retaliated against Shue by disingenuously and pretextually criticizing Shue's work performance.

73. Indeed, Aflalo routinely questioned employees of Defendant as to the last time they "saw" Shue in one of Defendant's offices.

74. For example, in or around December 2021, Aflalo criticized Shue for not being onsite in Rochester, New York for a work event.

75. At the time, Defendant and its staff, including but not limiting to, Aflalo, were aware that Shue's physical location was currently in Florida.

76. <u>Fourthly</u>, Defendant retaliated against Shue by unfairly and pretextually criticizing her management style after her complaint.

77. For instance, Aflalo informed Shue in December 2021 that she was improperly allowing one of Shue's direct reports – Naomi Bangaroo ("Bangaroo") – to work remotely, at-home for Defendant.

78. Aflalo wrongfully accused Shue of inappropriately favoring and giving Bangaroo special treatment.

79. Aflalo went so far so as to escalate a thinly veiled and untruthful complaint against Shue on this basis to senior leadership for Defendant.

80. Thereafter, Shue was unfairly and pretextually disciplined by Defendant.

81. Nevertheless, with respect to Aflalo's allegations regarding Bangaroo's remotely work capacity, Shue had previously obtained express authority from Defendant to allow Shue to work remotely, at-home for Defendant.

82. <u>Fifthly</u>, Defendant attacked Shue's moral character and loyalty to Defendant after her complaint.

83. For instance, in connection with Bangaroo's COVID-19 issues in or around January 2022, Aflalo wrongfully accused Shue of "not communicat[ing] honestly" about Bangaroo's symptoms to Defendant.

84. Around this time, additionally, Bangaroo made an internal complaint against Aflalo citing intimidation and bullying by Aflalo to Defendant.

85. To date, Bangaroo's internal complaint has not been investigated, acknowledged or in any way remedied by Defendant.

86. <u>Sixthly</u>, Defendant also retaliated against Shue by targeting employees on Shue's team for unwarranted, pretextual and retaliatory adverse action(s).

87. For example, on or about February 14, 2022, without notice of any kind to Shue, Defendants terminated one of Shue's direct reports and assistants – Valerie Reed ("Reed").

88. Defendant did not have any business justification to terminate Valerie Reed's employment and left Shue uninformed regarding the decision until after it was made.

89. Similarly, on or about, March 4, 2022, Aflalo terminated Loren Tierney ("Tierney") while Shue was on PTO and failed to advise Shue of the decision.

90. <u>Seventhly</u>, and perhaps most significantly, beginning in or around December 2021, Aflalo and Defendant's Chief Operations Officer – Timothy Matheny – targeted Shue for working remotely, at-home for Defendant.

91. Prior to her complaint and at all relevant times herein, Defendant authorized Shue to work remotely from home.

92. Indeed, a remote work from home option was specifically included in Defendant's April 2021 offer letter agreement executed with Shue and was a material term to the negotiations.

93. Nevertheless, Defendant retaliated against Shue by purposefully altering her work schedule and forbidding her from working remotely for Defendant in 2021 and 2022.

94. Defendant informed Shue that she was required to conform to an exclusively in-person work schedule by February 21, 2022.

95. In response, Shue offered that she could work in-person at Defendant's offices in March 2022 – after Shue returned from paid time off.

96. However, Defendant refused to authorize Shue's work from home and remote work capacity in February and March 2022.

97. At the same time, Defendant refused to allow Shue to work in person at their offices in March 2022, despite Shue's availability and willingness to work in-person at Defendant's offices in March 2022.

98. Defendant failed to negotiate with Shue in good faith regarding her remote work schedule.

99. Further, Defendant refused to authorize Shue's remote work capacity and allow her to return in-person in March 2022 as a pretextual justification for "setting up" Shue for termination.

C. DEFENDANT FURTHER RETALIATED AGAINST PLAINTIFF BY DISCRIMINATING AGAINST HER ON THE BASIS OF HER RACE AND COLOR.

100. After Shue made her complaint of sexual harassment, Defendant discriminated against Shue on the basis of her race and color.

101. Specifically, in connection with her authority to work from home and remotely for Defendant, a number of white employees were permitted by Defendant to work remotely and at home for Defendant during the time after the Sexual Harassment Complaint.

102. However, Shue was stripped of her authority to work from home in or around December 2021 and at all relevant times thereafter.

103. Nevertheless, in or around December 2021 and thereafter, Defendant continued to authorize and even encourage certain white employees to continue working remotely.

104. The white employees that were allowed to work from home and remotely were similarly situated to Shue at all relevant times herein.

105. Indeed, as a supervisor for Defendant with nearly twenty (20) years' of experience working for Defendant – that specifically negotiated a remote work environment as part of her promotion alongside other prior approval from Defendant's management – Shue was wrongfully retaliated against vis-à-vis Defendant's total cancellation of her work from home, remote work environment.

106. As such, Defendant subjected Shue to disparate treatment on the basis of her race and color and further retaliated against Shue on the basis of her complaint of sexual harassment.

107. As a direct result of the wrongful and oppressive actions of Defendant and its staff, Shue was subjected to unlawful discrimination, humiliated and experienced disparate treatment and a hostile work environment causing her embarrassment, discriminatory ridicule, and hostility, in addition to increased anxiety and mental and emotional trauma.

108. As a result of the Defendant's actions, Shue was unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

109. As a result of the acts and conduct complained of herein, Shue has suffered a loss of income by way of her forced early retirement by Defendant, the loss of salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such employment entails.

110. Shue has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

111. As a result of the acts and conduct complained of herein, Shue has suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Shue has further experienced severe emotional and physical distress.

112. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Shue demands Punitive Damages as against Defendant.

## FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

113. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114. 42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

115. As described herein, the Defendant discriminated against Plaintiff on the basis of her sex, race and color, in violation of Title VII by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment and disparate treatment that included, among other things, pervasive sexual harassment of Plaintiff and discrimination against her on the basis of her race and color.

116. As a result of the unlawful discriminatory conduct of the Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss

of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

117. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SECOND CAUSE OF ACTION
## FOR RETALITION UNDER TITLE VII

118. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

120. As described herein, Plaintiff engaged in protected activities, including but not limited to, making internal complaints regarding discrimination and retaliation to Defendant.

121. As described herein, after Plaintiff engaged in activities protected by Title VII, the Defendant took adverse actions against Plaintiff which would cause a reasonable employee from making or supporting a similar complaint of discrimination.

122. Following Plaintiff's complaints, Plaintiff was subjected to an increasingly worse hostile environment permeated with discriminatory ridicule, sexual harassment, unwarranted comments, insults, adverse employment actions, and other retaliatory behavior.

123. As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

124. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

### THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE NYSHRL

125. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

126. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

127. As described herein, Defendant discriminated against Plaintiff on the basis of her sex, race and color, in violation of NYSHRL, by subjecting her to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a

14

work environment which was filled with sexual harassment, discriminatory and retaliatory conduct against her.

128. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

129. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

130. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL

131. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

132. Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

133. As described herein, Plaintiff engaged in protected activities, including but not limited to, voicing, drafting and filing internal complaints regarding discrimination against her.

134. As described herein, after Plaintiff engaged in activities protected by the NYSHRL, Defendant took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

135. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

136. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## JURY DEMAND

137. Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII and the New York State Human Rights Law, in that Defendant discriminated against Plaintiff on the basis of her sex, race and color, and subjected her to a hostile work environment and disparate treatment permeated with sexual harassment and retaliatory conduct against her;

B. Awarding damages to Plaintiff resulting from Defendant's unlawful practices, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices, including but not limited to, loss of benefits as a result of Plaintiff's forced early

retirement stemming from Defendant's endorsement of a hostile work environment;

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's federal and state law claims;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injuries, distress, pain and suffering and injuries to his reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Garden City, New York
August 31, 2022

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

_____/s/_____
Marjorie Mesidor
Joseph Myers
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
mmesidor@tpglaws.com